# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL E. CUSI, et al., <br><br> Defendants. | CASE NO. 3:13-cv-935-MMA-BLM <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;** <br><br> **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. Nos. 37, 42] |

This case arises out of an unauthorized exhibition of a pay-per-view Ultimate Fighting Championship event. Plaintiff Joe Hand Promotions, Inc. ("Joe Hand" or "Plaintiff"), the commercial distributor of the program, sued Michael Cusi, Raquel Regno, Raymond Regno, and CGC Brazilian Jui Jitsu, Inc. ("Defendants"), for displaying the event without proper licensing. Before the Court are cross motions for summary judgment on the claims asserted in this action. For the reasons stated below, the Court **GRANTS** Defendants' motion for summary judgment on all federal causes of action, **DENIES** Plaintiff's cross motion for summary judgment, and **DECLINES** to exercise jurisdiction over the remaining state law claims.

## BACKGROUND[1]

Plaintiff Joe Hand is a closed circuit distributor of sports and entertainment programming. Joe Hand purchased and retained the exclusive commercial

---

[1] The following facts are not reasonably in dispute, unless otherwise noted.

exhibition licensing rights to "*Ultimate Fighting Championship 145: Jon Jones v. Rashad Evans*" to be shown on April 21, 2012 (the "Event"). Thereafter, Joe Hand marketed the sub-licensing rights to its commercial customers, including casinos, racetracks, bars, restaurants, and nightclubs. On April 21, 2012, Defendants broadcast the Event at their establishment, Stronghold CrossFit & Brazilian Jiu Jitsu ("Stronghold Crossfit"), without receiving the contractual authorization from Joe Hand or paying the fee required to do so. Defendants contend that they lawfully purchased and streamed the event over the internet, and that the establishment functioned as a private residence at the time of the viewing.

On April 18, 2013, Plaintiff Joe Hand filed this action against Defendants, alleging violations of 47 U.S.C. section 553, 47 U.S.C. section 605, California Business and Professions Code section 17000 *et seq.*, and conversion. Defendants now seek summary judgment on each of Plaintiff's claims.

## **LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Id.* at 323. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

If the moving party meets its initial burden, the burden then shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The opposing party "must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). If the motion and supporting materials, including facts considered undisputed, show the movant is entitled to summary judgment, the court may grant the motion. Fed. R. Civ. P. 56(e)(3).

## DISCUSSION

### A.     Claims Arising Under 47 U.S.C. §§ 553 & 605

Plaintiff's primary causes of action arise under the Cable Communications Act, 47 U.S.C. § 553 ("Section 553"), and the Communications Act, 47 U.S.C. § 605 ("Section 605"). A person violates Section 553 when he "intercept[s] or receive[s] . . . any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). Section 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *Kingvision Pay-Per-View v. Guzman*, Case No. C-09-00217, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009). Pursuant to Section 605:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Both Section 605 and Section 553 permit any aggrieved party to bring suit against the violator in federal court. *See* 47 U.S.C. § 605(e)(3)(A); 47 U.S.C. § 553(c)(1). Further, both Section 605 and Section 553 are strict liability statutes. *See J & J Sports Prods., Inc. v. Delgado*, Case No. 10-2517-WBS, 2012 WL 371630, at

*3 (E.D. Cal. Feb.3, 2012).

Defendants contend summary judgment is appropriate because Sections 605 and 553 do not apply to programs received and displayed over the internet. Defendants contend that they purchased the Event over the internet,[2] so that their actions cannot be governed by statutes designed to combat interceptions of satellite or cable signals.

Plaintiff contends that the *type* of internet service determines whether liability exists under Sections 503 or 605. Plaintiff states, "[w]hat Defendants fail to address is how they *accessed* the internet . . . . The signal came from somewhere." [Pl's Opp. at 4.] To support this proposition, Plaintiff cites *Zuffa, LLC v. Kamranian*, 2013 WL 1196632 (D. N.D. March 25, 2013). There, a sports bar streamed an Ultimate Fighting Championship event via the internet without authorization. The defendant produced evidence demonstrating that it had cable internet. Accordingly, the Court dismissed the plaintiff's Section 605 claim, as Section 605 only covered "radio" (i.e., satellite) signals.[3]

Even assuming that Plaintiff is correct that the type of internet service determines whether liability exists under Sections 503 and 605,[4] Plaintiff has failed to produce any evidence tending to demonstrate the type of internet used by Defendants. Moreover, as the discovery phase of the case is complete, Plaintiff cannot produce admissible evidence to support a necessary fact to support its claims under Sections 553 and 605. Fed. R. Civ. P. 56(c)(1)(B). Accordingly, the Court

---

[2] Though Defendants do not provide any evidence demonstrating which internet site they accessed to purchase the Event.

[3] Notably, the plaintiff did not include a cause of action under Section 553, which covers cable signals.

[4] The Court has no confidence in this assumption, and is generally skeptical that feeds received over the internet from a *third party* violate Sections 553 or 605. *See, e.g.*, *Ark Promotions, Inc. v. Justin.tv, Inc.*, 904 F. Supp. 2d 541, 549 ("[I]t does not appear that the Communications Act was intended by Congress, or has been interpreted by the courts, as imposing liability on a party who receives a transmission from a user who received or intercepted a broadcast signal from a cable or satellite provider.").

enters summary judgment in Defendants' favor on Plaintiff's federal statutory claims.

### B. Supplemental Jurisdiction Over Remaining State Law Claims

Based on the foregoing, there is no federal subject matter jurisdiction over the two state law claims that remain pending in this action. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000–01 (9th Cir. 1997) ("in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having resolved the federal causes of action, the Court **DECLINES** supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's claims for conversion and for violation of California Business and Professions Code section 17200 are **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's federal claims, **DENIES** Plaintiff's cross motion for summary judgment, and **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, this order disposes of all claims and concludes the litigation in the matter.

The Clerk of Court is instructed to enter judgment in favor of Defendants and terminate the case.

**IT IS SO ORDERED.**

DATED: May 14, 2014

*/s/ Michael M. Anello*
Hon. Michael M. Anello
United States District Judge